United States District Court
Southern District of New York
-------------------------------------------------

United States of America,

               -against-

                                            23 Cr. 292 (JSR)

Jonathan Davila,

                  Defendant.
-------------------------------------------------

### JONATHAN DAVILA'S MOTION TO DISMISS THE INDICTMENT

                                              Federal Defenders of New York
                                              Attorney for Jonathan Davila
                                              52 Duane Street - 10th Floor
                                              New York, New York 10007
                                              Tel.: (212) 417-8700

                                              Jonathan Marvinny
                                              Tamara L. Giwa

                                              *Of Counsel*


To:    Damian Williams, Esq.
         United States Attorney
         Southern District Of New York
         One St. Andrew's Plaza
         New York, New York 10007
         Attn:  Danielle R. Sassoon, Esq.
                   Assistant United States Attorney

**Contents**

Table of Authorities ................................................................................................................. i

Notice of Motion .................................................................................................................... 1

Background ............................................................................................................................. 1

Argument ................................................................................................................................ 1

18 U.S.C. § 922(g)(1) is unconstitutional facially and as applied to Davila. .............................. 1

    1.   The Second Amendment's plain text covers Davila and his alleged conduct ................. 3

    2.   There is no American historical tradition of prohibiting felons from possessing guns. ... 4

    3.   *Bruen* abrogated prior case law relying on "presumptively lawful" exceptions to the Second Amendment. ........................................................................................................ 6

## Table of Authorities

**Federal Cases**

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) ................................................................................ 2
*District of Columbia v. Heller*, 554 U.S. 570 (2008) ............................................................ 1, 3, 7
*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019) ................................................................................ 6
*Konigsberg v. State Bar of Cal.*, 366 U.S. 36 (1961) .................................................................... 2
*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ..................................................................... 1
*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022) ......................... 2, 5, 6
*Range v. Att'y Gen.*, 69 F.4th 96 (3d Cir. 2023) .................................................................. 3, 4, 5, 6
*United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013) .................................................................... 7
*United States v. Booker*, 644 F.3d 12 (1st Cir. 2011) ................................................................... 4
*United States v. Bullock*, 2023 WL 4232309 (S.D. Miss. June 28, 2023) .............................. 2, 4, 7
*United States v. Libertad*, 2023 WL 4378863 (S.D.N.Y. July 7, 2023) ................................ 1, 5, 6
*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) .................................................................. 4
*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) ............................................................ 3

**Federal Statutes**

18 U.S.C. § 922(g)(1) ............................................................................................................ passim

**Federal Rules**

Fed. R. Crim. P. 12(b) .................................................................................................................... 1

**Other Authorities**

*Heller's Catch-22*, 56 UCLA L. Rev. 1551 (2009) ........................................................................ 5
*The Limits of Second Amendment Originalism and the Constitutional Case for Gun Control*, 92 Wash. U. L. Rev. 1187 (2015) ................................................................................................ 5
*The Second Amendment, Heller, and Originalist Jurisprudence*, 56 UCLA L. Rev. 1343 (2009) 5

### Notice of Motion

Defendant Jonathan Davila moves this Court for an order dismissing the indictment on the ground that the statute he is charged with violating, 18 U.S.C. § 922(g)(1) (possession of a firearm after a felony conviction), is unconstitutional facially and as applied. U.S. Const. amends. II, V; Fed. R. Crim. P. 12(b).

### Background

Jonathan Davila is charged in a one-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). ECF No. 6. The Government alleges that, on April 17, 2023, in the Bronx, Davila was involved in an altercation with an individual during which he (Davila) brandished a firearm. *See* Complaint ¶ 4(a) (ECF No. 1). When NYPD officers arrived on the scene Davila fled and, while being chased, fell and dropped a .22 caliber pistol that the officers subsequently recovered. *Id.* ¶ 4(b), (c). Davila's criminal history includes, *inter alia*, a 2021 felony conviction for manslaughter in the first degree under New York Penal Law § 125.20. *Id.* ¶ 3.

### Argument

**18 U.S.C. § 922(g)(1) is unconstitutional facially and as applied to Davila.**

The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008); *see also United States v. Libertad*, 2023 WL 4378863, at *2 (S.D.N.Y. July 7, 2023). This enumerated right is "fundamental to our scheme of ordered liberty." *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (emphasis omitted). Courts accordingly may not treat it "as a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Id.* at 780.

Last year, in holding that Second Amendment protections include "an individual's right to carry a handgun for self-defense outside the home," the Supreme Court gave unequivocal guidance on how courts should determine whether gun regulations violate the Constitution. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2122 (2022). Rejecting lower courts' previous approach, which balanced the strength of the government's interest in regulating gun ownership against the degree of infringement on an individual's Second Amendment rights, the Court instead directed courts to consider only the "constitutional text and history." *Id.* at 2128–29. Under this new approach, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 2126. Then, "[o]nly if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

The statute at issue here, 18 U.S.C. § 922(g)(1), prohibits felons from possessing guns under all circumstances, including for self-defense. The problem Congress sought to address with this statute—the possession of guns by felons—is a "general societal problem that has persisted since the 18th century." *Id.* at 2131. It is therefore the Government's burden to identify a tradition of "distinctly similar" founding-era regulations. *See id.* But because no such historical tradition exists, prosecuting Davila under § 922(g)(1) violates his constitutional rights, notwithstanding the seriousness of his prior conviction for manslaughter or any other felony. *See, e.g.*, *United States v. Bullock*, 2023 WL 4232309, at *31 (S.D. Miss. June 28, 2023) (finding § 922(g)(1) unconstitutional as applied to defendant with prior aggravated assault and manslaughter convictions). Moreover, for the same reasons, there can be *no* constitutional application of the statute, so it is facially unconstitutional as well. *See generally Bucklew v.*

2

*Precythe*, 139 S. Ct. 1112, 1127 (2019). ("A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications.").

**1.      The Second Amendment's plain text covers Davila and his alleged conduct**.

Davila's alleged conduct falls squarely within the Second Amendment's plain text. The gun he is accused of "keeping" or "bearing," a pistol, is the type of "arm" to which the Second Amendment indisputably applies. *Heller*, 554 U.S. at 628 (D.C.'s handgun ban amounted "to a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society for" the lawful purpose of self-defense). And, regardless of his prior felony record, Davila is among "the people" the Second Amendment protects. As to this latter point, though the Court in *Heller* made reference to "law-abiding citizens," it explained that "the people," as used throughout the Constitution, "unambiguously refers to all members of the political community, not an unspecified subset." *Id.* at 580; *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990) (finding that "the people" should be interpreted consistently throughout the Bill of Rights and refers to all members of the national community). "The people" therefore includes felons. *See, e.g.*, *Range v. Att'y Gen.*, 69 F.4th 96, 103 (3d Cir. 2023) (en banc).

In *Range*, the en banc Third Circuit found that felons are among "the people" for Second Amendment purposes for several reasons. *Id.* at 101. For one, references to "law-abiding, responsible citizens" in *Heller* and other cases are mere dicta not binding on future courts. *Id.* For another, various constitutional provisions referencing "the people" confer important rights applicable to all members of the political community—including the rights to peaceably assemble, petition the government for redress, and avoid unlawful searches and seizures, among others—so reading "the people" to exclude felons would deprive them of those rights. *Id.* at 101–02. For yet another, the phrase "law-abiding, responsible citizens" is "hopelessly vague," so

concluding that the Second Amendment protects only such individuals would "devolve authority to legislators to decide whom to exclude from 'the people,'" an "extreme deference" that would impermissibly afford "legislatures unreviewable power to manipulate the Second Amendment by choosing a label and would contravene *Heller*'s reasoning that the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Id.* at 102–03 (cleaned up). Given these reasons and others, the Third Circuit "reject[ed] the Government's contention that only 'law-abiding, responsible citizens' are counted among 'the people' protected by the Second Amendment." *Id.* at 103. This Court should follow *Range*'s persuasive reasoning and conclude that felons, including Davila, are among "the people" entitled to Second Amendment protections.

**2.     There is no American historical tradition of prohibiting felons from possessing guns.**

"Until well into the twentieth century, it was settled that Congress lacked the power to abridge anyone's right to keep and bear arms." *Range*, 69 F.4th at 106 (Porter, J., concurring). The earliest version of the federal statute prohibiting felons from possessing firearms was the Federal Firearms Act of 1938, arriving well over a century after the Second Amendment's ratification. *Id.* at 104; *Bullock*, 2023 WL 4232309, at *2. Even then, in its initial form, that law barred only receipt of a firearm, and only by those convicted of "a few violent offenses." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010). The law was not extended to cover all felons until 1961, and not amended to bar simple possession (rather than receipt) until 1968. *Id.*; *see generally United States v. Booker*, 644 F.3d 12, 23–24 (1st Cir. 2011) ("18 U.S.C. § 922(g)(1)[] is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified.").

Nor did felon-disarmament laws exist in the states until the 20th century. In 1917, New York became the first state to prohibit felons from owning firearms; no other state did so until

4


1923. Lawrence Rosenthal, *The Limits of Second Amendment Originalism and the Constitutional Case for Gun Control*, 92 Wash. U. L. Rev. 1187, 1211 (2015) ("[P]rohibitions on the possession of firearms by convicted felons emerged early in the twentieth century in response to a crime wave following the First World War."); *see also* Adam Winkler, *Heller's Catch-22*, 56 UCLA L. Rev. 1551, 1563 (2009) ("Bans on ex-felons possessing firearms were first adopted in the 1920s and 1930s, almost a century and a half after the Founding."); Nelson Lund, *The Second Amendment, Heller, and Originalist Jurisprudence*, 56 UCLA L. Rev. 1343, 1357 (2009) (noting "the absence of historical support for the claim that [felon-disarmament laws] are consistent with the preexisting right to arms"). The recent vintage of these prohibitions cannot establish the requisite "historical tradition" required to sustain § 922(g)(1), as the Supreme Court considers even late-19th-century laws to have an unacceptable "temporal distance from the founding." *Bruen*, 142 S. Ct. at 2154.

We acknowledge that this Court, in upholding § 922(a)(3)'s prohibition on receiving firearms from out-of-state except through a federally licensed dealer, noted "an extensive history in both England and the colonies of disarming those deemed dangerous and requiring large swathes of the citizenry to swear loyalty oaths in order to demonstrate they were not dangerous." *Libertad*, 2023 WL 4378863, at *7. But "[t]hat Founding-era governments disarmed groups they distrusted … does nothing to prove that [Davila] is part of a similar group today." *Range*, 69 F.4th at 105. In any event, when considering a gun regulation directed at "a general societal problem that has persisted since the 18th century," such as the felon-in-possession ban in § 922(g)(1), courts must engage in a "straightforward historical inquiry," and the Government must identify a tradition of "distinctly similar," not just somewhat approximate, founding-era regulations. *Bruen*, 142 S. Ct. at 2131–32. That is, "when a challenged regulation addresses a

5

general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional." *Id.* at 2131.

To put it simply, in the founding era both felons and firearms existed, yet there was no law prohibiting the former from possessing the latter. Instead, "Founding-era laws often prescribed the forfeiture of the weapon used to commit a firearms-related offense without affecting the perpetrator's right to keep and bear arms generally." *Range*, 69 F.4th at 105 (citations omitted); *cf. Libertad*, 2023 WL 4378863, at *7 ("Several of the [colonial and early state] statutes prohibiting or regulating the export of arms or ammunition likely were motivated by a desire to keep weapons inside the particular polity for purposes of self-defense."). Indeed, "there are no examples of founding, antebellum, or Reconstruction-era federal laws like 18 U.S.C. § 922(g)(1) permanently disarming non-capital criminals." *Range*, 69 F.4th at 106 (Porter, J., concurring); *see also Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2019) (Barrett, J., dissenting) ("The best historical support for a legislative power to permanently dispossess all felons would be founding-era laws explicitly imposing—or explicitly authorizing the legislature to impose— such a ban. But at least thus far, scholars have not been able to identify any such laws."). Given the absence of any distinctly similar historical regulations, § 922(g)(1)'s ban on felons possessing firearms cannot be justified under the Second Amendment.

3. ***Bruen* abrogated prior case law relying on "presumptively lawful" exceptions to the Second Amendment.**

Faced with a law that is clearly inconsistent with the Second Amendment, the Government may point to *Heller*'s passing suggestion that "longstanding prohibitions" on felons

possessing firearms are "presumptively lawful." 554 U.S. at 626–27 & n.26. But *Heller*'s dictum, which briefly addressed an issue not raised in that case, has no effect on this Court's required independent analysis of § 922(g)(1). *See, e.g.*, *Bullock*, 2023 WL 4232309, at *18.

*Heller* had nothing to do with the lawfulness of felon-disarmament statutes, and the Court emphasized that, in reaching its holding, it did "not undertake an exhaustive historical analysis today of the full scope of the Second Amendment." 554 U.S. at 626. Since *Heller* was the Court's "first in-depth examination of the Second Amendment," the Court reiterated that it could not "clarify the entire field." *Id.* at 635.

*Bruen* subsequently demonstrated that the "presumptively lawful regulatory measures" the Court listed in *Heller* were just that—presumptive, in need of deeper analysis, and not the final word on those measures' constitutionality. So decisions treating *Heller*'s list as dispositive, like the Second Circuit's in *United States v. Bogle*, 717 F.3d 281 (2d Cir. 2013), are no longer good law. Instead, this Court should determine § 922(g)(1)'s constitutionality in the first instance.

New York, New York
July 21, 2023

Respectfully submitted,

/s/ Jonathan Marvinny
Jonathan Marvinny
Tamara L. Giwa
Assistant Federal Defenders
212.417.8792
jonathan_marvinny@fd.org